NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AARON DELBRIDGE, JILL DELBRIDGE and ADOLPH DELBRIDGE, | : : : : | Civil Action No. 2:09-4227 (SDW)(MCA) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| OFFICER WHITAKER (BADGE #191), UNNAMED OFFICER, SUSAN SERRARO – BAYONNE MUNICIPAL PROSECUTOR, BAYONNE POLICE DEPARTMENT, AND CITY OF BAYONNE, | : : : : : : : | May 10, 2010 |
| Defendants. | : : | |

**WIGENTON**, District Judge.

Before the Court is Defendants Officer James Whitaker ("Officer Whitaker" or "Whitaker"), City of Bayonne ("Bayonne") and Susan Ferraro's ("Ferraro") (collectively "Defendants")[1] partial Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) (the "Motion"). The Motion seeks to dismiss Plaintiffs Adolph Delbridge ("AD"), Jill Delbridge ("JD") and Aaron Delbridge's ("AAD") (collectively, "Plaintiffs") claims for malicious prosecution, various constitutional violations under 42 U.S.C. §§ 1983, 1985 and 1986, the Fifth, Sixth, Eighth and Fourteenth Amendments and violation of the New Jersey Law Against Discrimination, N.J. STAT. ANN. § 10:5-1 *et seq*.[2] This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). The Motion is decided without oral argument pursuant to FED. R. CIV. P. 78. The Motion is unopposed.

---

[1] Defendants note in their moving brief that they are improperly pleaded as "Officer Whitaker (Badge #191)," "Bayonne Police Department and City of Bayonne" and "Susan Serraro." (Defs.' Br. 1)

[2] Defendants assert Plaintiffs' claims for false arrest and imprisonment are not subject to their Motion. (Defs.' Br. 1)

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a domestic disturbance at Plaintiffs' home, in Bayonne, New Jersey. (Compl. 2.) The facts are as follows: on July 8, 2009, Officer Whitaker and another unknown officer (collectively, the "Officers" or "arresting officers") responded to a domestic disturbance at Plaintiffs' residence. (*Id*.) On arrival the Officers did not note any disturbance. (*Id*.) Upon further inquiry, AD and JD (collectively, "Plaintiff Parents") recounted the disturbance to the Officers.[3] (*Id*.) Subsequently, the Officers asked Plaintiff Parents what they wanted the Officers to do. (*Id*.) At this time, Plaintiff Parents "asked that their son leave the premises for awhile to calm down." (*Id*.) When the Officers asked Plaintiff Parents' son, AAD, to leave, AAD asked if he could leave later because he needed more time to gather his clothes, some of which were still being washed. (*Id*.) The Officers then, without further discussion with the parents, arrested AAD and "'dragged' [him] out of the home, in handcuffs, with nothing on his feet." (*Id*.) It is further alleged that AAD was not properly dressed. (*Id*.)

Though Plaintiffs allege AAD never committed a crime, AAD was charged with three counts of assault and aggravated assault for striking JD with a baseball bat. (*Id*. at 2-3.) Plaintiffs dispute that AAD ever hit JD with a baseball bat or that any Plaintiff ever made that claim to the Officers. (*Id*.) As a result of the arrest and subsequent charges, AAD spent two days in Hudson County Jail until he was released into AD's custody. (*Id*. at 3.)

Plaintiffs claim that despite a lack of probable cause, as evidenced by the Hudson County Central Judicial Processing Court's remanding the case to the Bayonne Municipal Court and the lack of an indictment from the grand jury, Defendants Municipal Prosecutor Ferraro and the City of Bayonne continued to press the case forward. (*Id*.) Plaintiffs also allege that various additional police officers made threatening statements, such as "[d]on't worry, we will make

---

[3] It should be noted that the complaint does not specify what was recounted.

something up," in response to Plaintiffs' insistence that AAD did nothing wrong. (*Id.* at 3.) The criminal charges against AAD are still pending in municipal court. (*Id.* at 4.)

## MOTION TO DISMISS STANDARD

The adequacy of pleadings is governed by FED. R. CIV. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)).

In considering a Motion to Dismiss under FED. R. CIV. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more

> than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556–57, 570) (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Id.*, the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).

## DISCUSSION

Defendants move to dismiss all counts of Plaintiffs' Complaint, with the exception of Plaintiffs' claims for false arrest and imprisonment. Specifically, Defendants ask the Court to dismiss Plaintiffs' claims for malicious prosecution, and certain alleged violations of 42 U.S.C. §§ 1983, 1985 and 1986, the Fifth, Sixth, Eighth and Fourteenth Amendments, and the New Jersey Law Against Discrimination, N.J. STAT. ANN. § 10:5-1 *et seq*. Defendants argue, among other things, that the factual allegations within the Complaint fail to support Plaintiffs' causes of action and that Defendant Ferraro is entitled to prosecutorial immunity. For the reasons stated below, Defendants motion is GRANTED in part and DENIED in part.

### I. Plaintiff Parents' Standing

As a preliminary matter, to the extent that Plaintiff Adolph and Jill Delbridge bring claims on behalf of their son AAD, their individual claims must be DISMISSED because they lack standing.

In order to have standing in an Article III court, a plaintiff must show that they: (1) personally suffered an actual or threatened injury; (2) the injury is fairly traceable to the

4

defendant's illegal conduct; and (3) the injury is likely to be redressed by a favorable decision. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State Inc.*, 454 U.S. 464, 472 (1982); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In addition to these constitutional standing requirements, courts also recognize certain judicially created prudential principles that further limit the Court's adjudicatory ability.[4] *Valley Forge Christian Coll.*, 454 U.S. at 474 ("[b]eyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing"); *see also* 4 Admin. L. & Prac. § 13:14 (2d ed.) ("[p]rudential considerations are limitations on the courts' power that the judiciary itself has devised . . ."). Nevertheless, even under prudential principles, a Plaintiff can only assert his own rights and interests; he may not assert those of a third party. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (prudential standing requires plaintiff to assert "his own legal rights and interests"); *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (prudential standing still requires plaintiff to "assert his own legal interests rather than those of third parties"); *see also cf. O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (a plaintiff "may only assert his own constitutional rights or immunities . . . one cannot sue for the deprivation of another's rights") (internal citations and quotations omitted).[5]

---

[4] Prudential principles include "several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

[5] Nevertheless, the rule that Plaintiffs must assert their own rights and interests in order to have standing is not absolute. *Kowalski v. Tesmer*, 543 U.S. 125, 130 ("we have not treated [the above] rule as absolute. A plaintiff may have standing to assert the rights of third parties if (1) they have a "'close' relationship with the person who possesses the right" and (2) there is a "'hindrance' to the possessor's ability to protect his own interests." *Kowalski*, 543 U.S. at 130 (quoting *Powers*, 499 U.S. at 411). However, third party standing is not looked upon "favorably." *Id.*; *Miller v. Albright*, 523 U.S. 420, 422 (1998) (O'Conner, J. & Kennedy, J., concurring) (there is a "presumption against third party standing"). A parent/child relationship would seem to be a sufficiently close relationship for the purposes of third party standing. *Lewis v. Thompson*, 252 F.3d 567, 585 (2d Cir. 2001) ("[a]s for prudential standing, the relationship between a parent and child is obviously close"). The "child" in this case is not a minor, however, nor is it alleged that he is incapacitated and therefore, there seem to be no obstacles preventing AAD from asserting his own rights. (*See* Compl. 4) ("plaintiff [AAD] is only 18 years of age").

Injuries to a parent resulting from violations of their child's constitutional rights are not sufficiently personal for purposes of the parent's individual standing.  *Hannah v. City of Dover*, 152 F. App'x 114, 116-17 (3d Cir. 2005) (parents could not bring Fourth Amendment or Equal Protection claims via § 1983 for son's injuries because the parent "had not been the recipient" of the injury); *Denman v. Wertz*, 372 F.2d 135 (3d Cir. 1967) (affirming dismissal of father's civil rights claim when police had detained and returned minor children to their mother's custody because plaintiff had not established he himself was deprived of rights); *C.H. v. Olivia*, 990 F. Supp. 341, 349 (D.N.J. 1997), *aff'd in part, vacated in part on other grounds*, 226 F.3d 198 (3d Cir. 2000) (mother had no individual standing to sue for son's constitutional injuries).

Moreover, other courts outside this Circuit have held that parents do not have standing to sue in their individual capacity for incidental injuries.  *Tyree v. Smith*, 289 F. Supp. 174, 175 (E.D Tenn.1968) ("[a] father has no standing to sue for the deprivation of civil rights of his children"); *E.W. v. Wake County Bd. of Educ.*, No. 09-0918, 2010 WL 1286215, at *15 (E.D.N.C. February 16, 2010) (parents did not have standing to sue individually because they did not suffer a direct injury) (citing *Pittsley v. Warish*, 927 F.2d 3, 8-9 (1st Cir. 1991) (after police allegedly mistreated children while arresting their parents, court held "only the person towards whom the state action was directed, and not those incidentally affected, may maintain a § 1983 claim")).  Plaintiff Parents further assert they "must continue to 'aid' their son in this matter, including typing, expenditures, transportation fees, ink, paper, giving comfort to their son, who is still traumatized by this experience, and being imprisoned." (*See* Compl. 6.)  Plaintiff Parents have no valid claims for "incidental" injuries.

Furthermore, it is unclear whether the Plaintiff Parents seek to assert any violation of their own constitutional rights.  The only mentioned injury to the Plaintiff Parents was that they

were "'lied' upon by defendants." (Compl. 4.)  This allegation is not sufficiently pled to state a valid claim for a violation of their constitutional rights.  Additionally, though Plaintiffs might argue they state a valid claim for defamation, that argument would fail as well.  Once again, the injury resulting from any alleged defamation occurred to their son, not themselves.  (*See* Compl. 4) (Defendants "used [their] good name and 'LIED' on [them] in order to maliciously harm [their] son").  Thus, Plaintiffs Adolph and Jill Delbridge will be DISMISSED as plaintiffs from this action.  We therefore only address Aaron Delbridge's remaining claims.

## II.     Claims against City of Bayonne and the Bayonne City Police Department

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

To establish § 1983 liability against a municipality or governmental entity, Plaintiff must demonstrate that his alleged deprivation of rights occurred as a result of a custom or policy of the entity.  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690, 694 (1978) (government entity can only be liable under § 1983 for "execution of a government's policy or custom"); *Simmons v. City of Phila.*, 947 F.2d 1042, 1059 (3d Cir.1991), *cert. denied*, 503 U.S. 985 (1992) (municipal liability is predicated on a showing of "a decision officially adopted and promulgated or from a permanent and well-settled practice").  The Supreme Court has set forth the following principles for establishing a violation of § 1983 based on such a theory:

> [I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or

> "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law . . .
>
> . . . .
>
> . . . [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (emphasis in original).

In this case, Plaintiff cannot meet his burden. Plaintiff states, in relevant part:

Defendants Bayonne Police Department aided, and abetted the false charges, by not investigating the allegations made by their suboardinates [sic] verses [sic] no complaints being filed by the alleged victim. Furthermore, since so many officers had stated the phrase, "Well I'll just make up a charge when we get to headquarters" clearly shows a sort of "policy(ies) or "custom". [sic] In that, the City of Bayonne shurk [sic] its duty to plaintiffs as well.

(Compl. 5.)

Significantly, Plaintiff's Complaint fails to allege that Bayonne and/or its Police Department implemented these customs and policies on more than one occasion. It is well established law in this Circuit that a policy or custom, sufficient to maintain a § 1983 claim, cannot be inferred from one single instance of misconduct.[6] *Losch v. Borough of Parkesburg,*

---

[6] A single instance of misconduct can be used to infer a policy in limited circumstances that are not applicable here. For example, if an "official policymaker" makes the allegedly unconstitutional decision at issue, municipal liability may be imposed. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("municipal liability may be imposed for a single decision by municipal policymakers" such as a legislative body or individuals who create policy); *Keenan v. City of Phila.*, 983 F.2d 459, 468 (3d Cir. 1992) (a single instance of misconduct by a policymaking official can be used to infer a policy). Here, the specific Defendants accused of wrongdoing are not official policymakers. Thus, the well established principal that "municipal liability under § 1983 cannot be inferred from a single instance of police misconduct by a *non-policy making employee*" precludes liability. *Minck v. Alaimo*, No. 06-4263, 2008 WL

*PA*, 736 F.2d 903, 911 (3d Cir. 1984) ("[a] policy cannot ordinarily be inferred from a single instance of illegality such as a first arrest without probable cause"). Additionally, at no other point in his Complaint does Plaintiff list another transgression that could give rise to a policy or custom that would be actionable under § 1983. Without such an allegation, Plaintiff's claim against Bayonne and its Police Department must be DISMISSED.

**III.   Claims against Defendant Ferraro**

Plaintiff's claims against Bayonne Municipal Prosecutor Susan Ferraro are barred by prosecutorial immunity. Prosecuting attorneys are absolutely immune from liability for their acts in initiating or pursuing a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [§] 1983"). Thus, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

A prosecutor is not entitled to absolute immunity, however, for actions undertaken in some other function. *See Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997) (holding that prosecutor is not protected by qualified immunity for attesting to the truth of facts contained in certification in support of arrest warrant, as in her provision of such testimony she functioned as a complaining witness rather than a prosecutorial advocate for the state); *Burns v. Reed*, 500 U.S. 478, 492-96 (1991) (the provision of legal advice to police during pretrial investigation is not protected by qualified immunity); *Buckley*, 509 U.S. at 276-78 (prosecutor is not acting as an advocate, and is not entitled to absolute immunity, when holding a press conference or

---

2478388, at *3 (D.N.J. June 18, 2008) (quoting *Brown v. City of Camden*, No. 03-1303, 2006 WL 2177320, at *8 (D.N.J. July 27, 2006)) (emphasis added).

fabricating evidence); *see also Yarris v. County of Del.*, 465 F.3d 129 (3d Cir. 2006) (analyzing when a prosecuting attorney is, and is not, entitled to absolute immunity for allegedly wrongful acts in connection with a prosecution and holding, for example, that a prosecutor is not entitled to absolute immunity for deliberately *destroying* highly exculpatory evidence, but is entitled to immunity for deciding to deliberately *withhold* exculpatory evidence before and during trial).

Plaintiff alleges no facts against Ferraro in this case that would fall outside the scope of her duties in initiating and pursuing a criminal prosecution against Plaintiff. Thus, Ferraro is immune from suit and she is DISMISSED as a defendant in this action.

## IV. New Jersey Law Against Discrimination

The New Jersey Law Against Discrimination ("LAD"), codified at N.J. STAT. ANN. § 10:5-1 *et seq*, prohibits unlawful discrimination in employment, housing, places of public accommodation, and certain business transactions.[7] *See* N.J. STAT. ANN. §§ 10:5-4, 10:5-12; *Jackson v. Concord Co.*, 54 N.J. 113, 122 (N.J. 1969); *Rubin v. Forest S. Chilton, 3rd, Mem'l Hosp., Inc.*, 359 N.J. Super. 105, 109-10 (App. Div. 2003).

In this case, Plaintiff, who is an African-American, appears to base his claim on a theory of discrimination in a place of public accommodation. (*See* Compl. 4.) The LAD provides that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation" without discrimination on the basis of race. N.J. STAT. ANN. § 10:5-4. Significantly, this District has held that police stations and prisons are places of public accommodation. *Albrecht v. Williams*, No. 04-1895, 2009 WL

---

[7] In Defendants' Brief in Support of their Motion to Dismiss, Defendants imply that the LAD is solely an employer liability statute. (Defs.' Br. 7.) As illustrated *infra*, Defendants are mistaken. When interpreting the LAD, New Jersey's Supreme Court has construed the language of the statute to achieve the New Jersey Legislature's broad remedial purpose of ending discrimination. *Cedeno v. Montclair State Univ.*, 163 N.J. 473, 478 (N.J. 2000) (explaining that the important public policies of the LAD necessitate a broad interpretation).

3296649, at *18 (D.N.J. Oct. 13, 2009) ("[u]nder the provisions of the LAD, prisons qualify as places of accommodation"); *Jobes v. Moorestown Twp.*, No. 03-4016, 2006 WL 3000444, at *11 (D.N.J. Oct. 19, 2006) ("an LAD claim against the police department may proceed beyond the dismissal stage because the police department is considered a place of public accommodation") (citing *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 337 (App. Div. 2004)).

In *Ptaszynski*, Woodridge Township police officers responded to a domestic violence call at the home of a husband and his wife. *Ptaszynski*, 371 N.J. Super. at 337-38. The husband was arrested and both were charged with various offenses. *Id.* at 339. After the criminal trial, one of the arresting officers filed a civil suit against the husband, and the husband and wife counterclaimed against the officer for, among other claims, violations of the LAD. *Id*. at 337-38.

The trial judge dismissed the LAD claim and held that the police station was not a place of "public accommodation" within the meaning of the LAD. *Id.* at 337. The Appellate Division reversed because it concluded that a municipal police department qualified as a "place of public accommodation" for the purposes of an LAD claim. *Id*. The Appellate Division, however, though it reversed the dismissal of the LAD claims, did not comment on the substantive standard with which to judge police actions in the context of LAD claims.

The legal standard for evaluating discrimination in a public accommodation under the LAD is derived from analogous federal antidiscrimination statutes, such as Title VII of the Civil Rights Act for employment discrimination and Title VII of the ADEA for age discrimination. *Chisolm v. Manimon*, 97 F. Supp. 2d 615, 621 (D.N.J. 2000), *rev'd on other grounds*, 275 F.3d 315 (3d Cir. 2001) ("New Jersey courts generally interpret the LAD by reliance upon [the construction of] analogous federal antidiscrimination statutes"); *cf. Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 70 (3d Cir. 2006) (LAD disability claims and ADA claims

11

are governed by the same standard). This Court has analyzed LAD claims based on racial discrimination using the same standard governing Equal Protection claims. *Clark v. Bd. of Educ. of the Franklin Twp. Pub. Sch.*, No. 06-2736, 2009 WL 1586940, at *6-11 (D.N.J. June 4, 2009) (analyzing Plaintiff's § 1983 claim of Equal Protection violation and his LAD claims together); *Rojas v. City of New Brunswick*, No. 04-3195, 2008 WL 2355535, at *31 (D.N.J. June 4, 2008) (using Equal Protection standard to analyze LAD claim regarding an allegedly racially discriminatory arrest).

To show a violation of Equal Protection, Plaintiff must show that Defendants' actions had a "disproportionate impact" and were motivated by "discriminatory intent." *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-66 (1977). Consistent with this framework, courts have held LAD racial discrimination claims require proof of intent to discriminate. *Parker v. Dornbiere*, 140 N.J. Super. 185, 189 (App. Div. 1976) (intent to discriminate is required for a LAD racial discrimination claim); *cf. Fuchilla v. Layman*, 109 N.J. 319, 335 (N.J. 1988) (in a lawsuit alleging sexual, not racial discrimination under § 1983 and the LAD, the Court discusses that the LAD emphasizes "motive or intent"); *Rojas*, 2008 WL 2355535, at *31 ("[t[he crucial element is the intent to discriminate").

Plaintiff fails to allege Defendants' actions had any discriminatory intent, purpose, or effect. In fact, Plaintiff's Complaint is devoid of any specificity concerning the alleged discrimination. Plaintiff merely states: "The officers acted with 'clear malice', and discrimination against this African American plaintiff." (Compl. 4.) Plaintiff provides no guidance as to what part of Defendants' conduct could be considered discriminatory and instead leaves it to the Court to infer malice on the part of the officers and the department. Such conclusory allegations are patently insufficient to support Plaintiff's LAD claim. *Watiti v.*

*Walden Univ.*, No. 07-4782, 2008 WL 2280932, at *14 (D.N.J. May 30, 2008) (dismissing an LAD claim alleging "discriminatory testing" because of a lack of factual detail); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" the complaint should be dismissed). Without specific examples giving rise to an inference of discriminatory intent, Plaintiff's claims cannot survive.

The Court notes, however, that Plaintiff is *pro se* and thus his Complaint should be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*pro se* complaints are held to less stringent standards than ones drafted by lawyers). A *pro se* litigant's complaint should only be dismissed if the plaintiff will undoubtedly be unable to provide a set of facts supporting his claim for relief. *Riley v. Jeffes*, 777 F.2d 143, 148 (3d Cir. 1985) (quoting *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir. 1976), *abrogated by Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004)) (a *pro se* complaint "should not be dismissed unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'"). However, a *pro se* complaint may be dismissed if it contains merely "vague and conclusory allegations." *Gray v. Creamer*, 465 F.2d 179, 182 n.2 (3d Cir. 1972) (citing *Negrich v. Hohn*, 379 F.2d 213, 215-16 (3d Cir. 1967) (complaints must be specifically pled)).

Nevertheless, we recognize this Circuit's "longstanding policy of allowing pro se plaintiffs to amend their complaints before the court rules upon defendants' motion to dismiss." *Roman v. Jeffes*, 904 F.2d 192, 196 n.8 (3d Cir. 1990); *see also Kauffman v. Moss*, 420 F.2d 1270, 1276 ("[t]he considerations underlying the *Negrich* requirement must be balanced against the equally important policies that pro se litigants not be denied the opportunity to state a civil rights claim because of technicalities"). In light of Plaintiff's *pro se* status, the Court will

13

provide Plaintiff with an opportunity to amend his Complaint to detail the circumstances of this alleged discrimination. *Delbridge v. Acme Foods Corp.*, No. 08-4821, 2008 WL 5244330, at *3 (D.N.J. Dec. 15, 2008) (granting leave to amend LAD claims in complaint "given plaintiff's pro se status").

## V.     42 U.S.C. § 1985(3)[8]

Section 1985(3) creates a private right of action for persons injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[9]  42 U.S.C. § 1985(3).  To state a claim under § 1985(3), Plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971)).

It is debatable whether Plaintiff has even met the first requirement of a § 1985 claim: allegation of a conspiracy.  In his Complaint, Plaintiff claims that multiple actors, including the officers, police department and prosecutor committed various acts to deprive him of his civil rights. (Compl. 3-5.)  At no point, however, does Plaintiff allege that there was an agreement by any of the defendants to engage in these acts.  *Carpenter v. Ashby*, 351 F. App'x 684, 687 (3d

---

[8] Section 1985 has three subsections, yet Plaintiff fails to identify which subsection he invokes. Section 1985 (1) and (2) prohibit conspiracies formed either to prevent an officer of the United States from performing official duties or to obstruct justice, respectively. 42 U.S.C. §§ 1985(1), (2). Both are clearly inapplicable here and § 1985(3) is the only plausible subsection that Plaintiff could have relied on.

[9] Section 1985(3), however, does not create any substantive rights, but permits individuals to enforce substantive rights against conspiring private parties. *See Marino v. Bowers,* 657 F.2d 1363, 1371 (3d Cir.1981) (*quoting Great Am. Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979)) ("Section (1985(3)) provides no substantive right itself; it merely provides a remedy for violation of the rights it designates").

14

Cir. 2009) ("[s]ection 1985 requires a plaintiff to . . . set forth facts from which a conspiratorial *agreement* between the defendants can be inferred") (emphasis added).  At best, Plaintiff alleges that Defendants "aided, and abetted the false charges" leading to the deprivation of Plaintiff's rights.  (Compl. 4.)  This is not a sufficient factual basis from which the Court could infer a conspiratorial agreement.

As troubling, is the absence of any allegation regarding Defendants' discriminatory intent needed to satisfy the second requirement of a § 1985(3) claim.  As discussed *supra*, in the Court's analysis of Plaintiff's LAD claim, Plaintiff's Complaint lacks any specificity regarding Defendants' discriminatory intent.  Instead, Plaintiff only implies that Defendants acted because Plaintiff was an "African American." (Compl. 4.)  Plaintiff's mere insinuations are insufficient to state a valid claim.  *Carter v. Del. State Univ.*, 65 F. App'x 397, 400 (3d Cir. 2003) (plaintiff's "§ 1985 claim fails" because of a failure "to clearly demonstrate that racial animus motivated the Defendants' decision"); *Doering v. Union County Bd. of Chosen Freeholders*, No. 86-1238, 1987 WL 11474, at *7 (D.N.J. May 05, 1987) (a "§ 1985(3) claim fails as a matter of law [if] . . . Plaintiff fails to allege the 'invidiously discriminatory animus' prompting defendants' actions, as is required for a § 1985(3) action").

As read, Plaintiff's Complaint is deficient.  However, under the same logic applied above to Plaintiff's LAD claim, because of Plaintiff's *pro se* status, the Court is willing to read the Complaint liberally.  *See Haines*, 404 U.S. at 520.  Consequently, the Court will grant Plaintiff leave to amend his Complaint to meet the requirements necessary to state a valid claim under § 1985(3).

**VI.     42 U.S.C. § 1986**

To state a valid § 1986 claim, a plaintiff must first establish the existence of a § 1985 conspiracy. *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir.1980)) ("transgressions of § 1986 by definition depend on a preexisting violation of § 1985. . .").[10] As discussed *supra*, Plaintiff has failed to plead sufficient details to state a valid § 1985 claim. However, in light of the Court granting Plaintiff leave to Amend his § 1985 claims, it is logical for the Court to defer ruling on his § 1986 claims until after Plaintiff has had an opportunity to amend the Complaint.

**VII.    Malicious Prosecution Claim against the Arresting Officers.**

Plaintiff asserts claims against Officer Whitaker and another unknown officer for malicious prosecution. (Compl. 4.) It is unclear whether Plaintiff brings his claim pursuant to § 1983 and/or under state law. Either way, however, Plaintiff's claim(s) for malicious prosecution must be DISMISSED without prejudice.

Under New Jersey law, the tort of malicious prosecution requires proof "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Lind v. Schmid*, 67 N.J. 255, 262 (N.J. 1975). Similarly, to establish a malicious prosecution claim under federal law, pursuant to § 1983, Plaintiff must show that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff

---

[10] Additionally, a plaintiff must demonstrate that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clark*, 20 F.3d at 1295.

16

suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

Significantly, then, the case law is clear that under both state and federal law, a plaintiff must prove that the initial criminal proceeding was terminated *and* that it ended in the plaintiff's favor.  In this case, Plaintiff can prove neither.  According to the Complaint, the assault charges against Plaintiff are still pending in municipal court and therefore are not ripe for adjudication. (Compl. 4.)  Plaintiff's claim(s) for malicious prosecution will therefore be DISMISSED. *James v. Super. Ct. of N.J.*, Nos. 07-3609, 07-4683, 2008 WL 352862, at *8 (D.N.J. Feb. 07, 2008) ("[b]ecause the criminal prosecution . . . has not terminated in plaintiff's favor, but is still pending, plaintiff has not stated a constitutional tort for malicious prosecution"); *Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 25 (App. Div. 2001) ("[s]ince the criminal complaint against plaintiff was still pending . . . plaintiff could not show that it had been 'terminated favorably' to him and thus he did not yet have a viable cause of action for malicious prosecution").

## VIII.  Constitutional Claims

Plaintiff cites the Fifth, Sixth, Eighth, and Fourteenth Amendments as a basis for this Court's jurisdiction.[11]  While it is true, as we explained above, that "[p]ro se plaintiffs cannot be

---

[11] Alternatively, Plaintiff could be relying on the Fifth, Sixth, Eighth, and Fourteenth Amendments as a basis for his § 1983 claim. Section 1983 does not provide substantive rights, but merely provides a method for "vidicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Thus, a claim under § 1983 necessarily requires an identification of the specific constitutional rights allegedly infringed. *Baker*, 443 U.S. at 140 ("it is necessary to isolate the precise constitutional violation" in order to bring a § 1983 claim). If this is his theory, Plaintiff's failure to identify the specific rights allegedly violated is insufficient to support a valid claim. *Husain v. Casino Control Com'n*, No. 06-4923, 2007 WL 2375034, at *3-5 (D.N.J. Aug. 14, 2007) (acknowledging the need to liberally construe *pro se* plaintiffs' complaints, but dismissing for lack of specificity); *but see Pitts v. Hayman*, 344 F. App'x 753, 754 (3d Cir. 2009) (reversing dismissal of complaint for lack of factual specificity and holding that individuals filing § 1983 claims must be given a "reasonable opportunity" to amend "unless amendment would be futile"). *Pitts* is distinguishable from the case at hand.  The plaintiff in *Pitts* affirmatively asserted violations of his Eight and Fourteenth Amendment rights. *Pitts v. Hayman*, No. 07-2256, 2008 WL 1776568, at *3 (D.N.J. Apr. 16, 2008).  Here, this Court can not even discern whether Plaintiff avers constitutional violations at all, and if so, whether he is pleading pursuant to § 1983 or asserting individual claims.

held to the same strict standards as attorneys, . . . they also cannot be excused from compliance with the plain text of the federal rules." *Junne v. Atlantic City Med. Ctr.*, No. 07-5262, 2008 U.S. Dist. LEXIS 71832, at *3 n. 1 (D.N.J. Sept. 3, 2008) (quoting *Joseph v. Lopez*, No. 05-1640, 2007 U.S. Dist. LEXIS 27879, at *2 (D.N.J. Apr. 11, 2007) (internal quotations and citations omitted)). In this case, Plaintiff fails to specifically allege how and if his rights under these Amendments were violated. He merely cites them for jurisdiction and fails to mention them again. Plaintiff's Complaint does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . ." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiff's lack of specificity dooms his claims, and to the extent that Plaintiff asserts violations of his rights, based on those Amendments, they will be DISMISSED.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Specifically, Plaintiffs' claims against Defendants for violations of the Fifth, Sixth, Eighth and Fourteenth Amendments are DISMISSED. Additionally, Plaintiffs' claims against Bayonne and Bayonne Police Department pursuant to § 1983 and against the arresting officers for malicious prosecution are also DISMISSED. Moreover, Defendant Ferraro is DISMISSED as a defendant in this case and the Plaintiff Parents are DISMISSED as plaintiffs.

Defendants' Motion to Dismiss Plaintiffs' claims under §§ 1985 and 1986 and for violation of the LAD is DENIED and Plaintiff AAD is granted leave to amend his claims for the purpose of providing more detail of Defendants' alleged conspiracy and discriminatory conduct.

SO ORDERED.

                                                s/ Susan D. Wigenton
                                                **Susan D. Wigenton, U.S.D.J.**

cc: Madeline Cox Arleo, U.S.M.J.